JULIUS ALEXANDER, Individually and as Stockholder, Suing on Behalf of Himself and All Other Stockholders of QUALITY LEATHER GOODS CORPORATION, Similarly Situated, Plaintiff, *v.* QUALITY LEATHER GOODS CORPORATION and Others, Defendants.

Supreme Court, New York County, February 7, 1934.

*Weinstein & Levinson* [*Frank Weinstein* and *Samuel J. Levinson* of counsel], for the plaintiff.

*Max Steinberg*, for the defendants Quality Leather Goods Corporation and another.

*I. Joseph Rose*, for the defendants Quality Leather Bag Co., Inc., and another.

ROSENMAN, J. The plaintiff and defendants Weitz and Shum were each a director in, and an owner of one-third of all the capital stock of, the Quality Leather Goods Corporation (hereinafter called "the old corporation").

On December 11, 1929, the plaintiff agreed in writing to sell to Weitz and Shum his one-third interest and to resign as a director and officer. As part of the purchase price the plaintiff received fifty promissory notes, each in the sum of $200, from his vendees. The agreement of sale provided: "3. The Certificate or Certificates of stock held by Julius Alexander shall be indorsed by him and are to be held by         in escrow as security for the payment of all of said promissory notes, and when the last note is paid the said Certificate shall be delivered to said Abraham Shum and Benjamin Weitz."

Pursuant to this agreement plaintiff indorsed his certificate of stock in blank and delivered it to one Maxwell Brenner to hold in escrow. There was no transfer of ownership of the shares of stock noted on the books of the corporation.

Sixteen of the notes given for the stock were unpaid. Plaintiff demanded the return of the certificate of stock from the escrow holder. It was returned to the plaintiff, who still has it in his possession.

Thereafter, on February 20, 1931, the defendants Shum and Weitz entered into an agreement with defendant Hoorwitz to organize the defendant corporation "Quality Leather Bag Co., Inc." (hereinafter called "the new corporation"). The defendants Weitz and Shum were to subscribe to all of the $30,000 of class B preferred stock in the new corporation. In payment therefor they were to turn over to the new corporation $12,000 in cash and $18,000 in machinery, raw material and stock belonging to the old corporation. Hoorwitz was to pay $20,000 in cash for all of the class A preferred stock of the new corporation.

This agreement was carried out. On March 12, 1931, the defendants Shum and Weitz executed a certificate of dissolution of the old corporation which was filed on April 15, 1931, with the Secretary

of State. On March 16, 1931, the new corporation issued to the old corporation two certificates each for one-half of all the class B preferred stock. Shum took one of these certificates; Weitz took the other. All the assets of the old corporation were transferred to the new corporation at the appraised value as fixed, $18,835.97.

In the affidavit attached to and made a part of the certificate of dissolution defendants Weitz and Shum stated that they were duly authorized to execute the certificate of dissolution by a vote of the holders of record of two-thirds of the outstanding shares of stock at a meeting of stockholders called on notice pursuant to section 45 of the Stock Corporation Law to every stockholder of record entitled to vote.

The business of the old corporation was thereupon terminated. All of its creditors were paid. The new corporation carried on business for about one year, defendants Weitz, Shum and Hoorwitz acting as directors and officers. It then discontinued business, liquidated, and paid its creditors. Hoorwitz received back no part of his investment after the liquidation of the new corporation.

The plaintiff, in the meantime, remained in ignorance of all these proceedings. He received no notice of any of these steps. Upon discovering the facts, he brought this action as a minority stockholder against the defendants for an accounting of the assets of the old corporation and for a personal judgment against them for $3,200, the amount of the unpaid notes.

It is necessary, in the first instance, to determine the effect of the escrow agreement of December 11, 1929. The defendants contend that by the agreement the plaintiff divested himself of the title to the stock and of all his rights as a stockholder. If this be correct, then the plaintiff cannot maintain this action.

The plaintiff delivered his certificate, indorsed in blank, to Brenner " in escrow " to be turned over to the defendants Shum and Weitz " when the last note is paid." The intention seems clear that only upon the payment of all the notes was title to pass. The notes were not paid. The contingency which was agreed upon by the parties to signal the change in ownership did not occur. Title could pass only upon the performance of this condition. The failure to perform left the title in the plaintiff.

In *Stanton* v. *Miller* (58 N. Y. 192), in discussing escrow, the court said: " A deed delivered to a third person to be held until the performance of some condition, is a delivery in escrow (2 Bl. 307). Unlike the case of a delivery to the grantee, or his agent, no title passes until the condition is performed, nor, generally, until an actual delivery of the deed to the grantee after the happening of the event upon which the title is suspended."

In *Van Tassel* v. *Burger* (119 App. Div. 509) the court said in an opinion by Hooker, J. (p. 511): " If the grantee had never performed the conditions of the escrow agreement, the title would have remained in the defendant Baynes;" and in a concurring opinion by Miller, J.: " Where a deed is delivered as an escrow nothing passes by the deed unless and until the condition of its delivery is performed."

To the same effect, see *Jackson* v. *Rowland* (6 Wend. 666); *Ruggles* v. *Lawson* (13 Johns. 285).

Plaintiff, therefore, remained the owner of the stock in the old corporation and was entitled to all the rights of a stockholder.

Section 45 of the Stock Corporation Law provides for notice to stockholders of any action to be taken at a meeting of stockholders. Section 105 provides that for a voluntary dissolution of the corporation notice to stockholders must be given pursuant to section 45. No notice of any kind was given to plaintiff of the meeting allegedly held to dissolve the old corporation. The dissolution, therefore, was consummated contrary to law.

Section 20 of the Stock Corporation Law provides for a consent of two-thirds of the stockholders for a sale of the corporate assets, to be obtained at a meeting for which notice shall have been given to its stockholders in the manner provided by section 45. No such notice was given to the plaintiff. The plaintiff has the right to complain. (*Matter of Timmis*, 200 N. Y. 177; *People* v. *Ballard*, 134 id. 269.)

The accumulated evidence makes manifest that the defendants Shum and Weitz and the new corporation were all culpable in their manipulation of the old corporation to the advantage of Shum and Weitz and to the disadvantage of the plaintiff stockholder. Without question, therefore, the plaintiff must have his remedy as against them.

The situation with respect to defendant Hoorwitz is different. He had a right to rely on the statements of Shum and Weitz that they were the only stockholders, and on the certificate of dissolution in which they swore that the action had been authorized by a vote of the stockholders of the old corporation taken pursuant to law. He had paid $20,000 in cash for the stock in the new corporation. The benefits he derived from the transaction came only after a cash consideration was paid by him to the new corporation. (See *Kaszubowski* v. *Buffalo Telegram Corp.*, 131 Misc. 563.) Hoorwitz was guilty of no fraud in fact. Nothing has been presented to charge him with fraud in law. As to him the complaint must be dismissed.

The next question is the form of the judgment to be entered.

When a minority stockholder brings an action on behalf of himself and on behalf of other stockholders similarly situated he exercises a derivative right, and judgment must ordinarily be rendered in favor of the corporation, though the corporation be a defendant in the action. In *Wangrow* v. *Wangrow* (211 App. Div. 552) McAvoy, J., writing for the court, said: " Equity will protect the rights of minority stockholders in an action brought by a stockholder on behalf of himself and on behalf of all other stockholders similarly situated who desire to come in and join in the action. The plaintiff in such an action exercises a derivative right. The corporation, and not he, is the beneficiary of any relief granted. If there is a money judgment it runs in favor of the corporation, although the corporation may be a defendant in the action." (*Ebling* v. *Nekarda*, 148 App. Div. 193; affd., 210 N. Y. 566; rearg. denied, Id. 611; *Miller* v. *Crown Perfumery Co.*, 125 App. Div. 881.)

In the present case, however, there is only one interested stockholder — the plaintiff. All the creditors have been paid. The defendants Shum and Weitz cannot benefit from a recovery in this action; they were the ones guilty of the misconduct. The old corporation is no longer in existence; it has been dissolved. Practical and procedural difficulties would arise if judgment were decreed in favor of the old corporation. The complaint demands a personal judgment. Equity may give the relief requested. (*Baily* v. *Hornthal*, 154 N. Y. 648; *Skillin* v. *Maibrunn*, 75 App. Div. 588; affd., without opinion, 176 N. Y. 588.)

Precedent in awarding a personal judgment in a situation similar to this is found in the case of *Harris* v. *Rogers* (190 App. Div. 208). That was an action brought by plaintiff on behalf of all stockholders of a bank against its directors for negligence in the administration of the affairs of the bank. The 1,000 shares of the capital stock of the bank had been issued. Owners of 606 shares had given general releases to the directors; 141 shares had disclaimed the right to participate in any recovery; 218 shares were held by the defendant directors. This made a total of 965 shares, the owners of which could not share in the benefit of a judgment. The Special Term rendered personal judgment against the directors in favor of the holders of the remaining 35 shares instead of in favor of the corporation. On appeal the claim was made that judgment should have been given to the corporation, since this was a representative action. The court, however, said: " If the full demand of the plaintiff were accorded by the judgment, it would result in the payment to the bank of the full sum of $109,702.72, with the resulting benefit of a distribution to all stockholders, in proportion

to their stock holdings. In the interest of an equitable result, I can see no sound reason why the court may not, by its judgment, select the parties entitled to benefit by the damages recovered, and withhold beneficial results from those culpably negligent. That is what has been accomplished by the judgment rendered." (See *Vogt* v. *Vogt*, 119 App. Div. 518; rearg. denied, 120 id. 896.)

Judgment is, therefore, awarded in favor of the plaintiff against the defendants Shum, Weitz and Quality Leather Bag Co., Inc., in the sum of $3,200, with interest, upon payment of which the plaintiff must deliver up his certificate of stock. Complaint dismissed as to defendant Hoorwitz. Submit findings of fact and conclusions of law on notice.